# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | Bankruptcy Case No. 13-61182-fra7 |
| JAMMIE HARTLEY and MELISSA HARTLEY, | |
| Debtor(s). | MEMORANDUM OPINION |

Debtors filed for bankruptcy protection under chapter 7 on April 4, 2013. Pursuant to 11 U.S.C. § 704(b)(1)(A),[1] the United States Trustee ("UST") reviewed all materials filed by the Debtors and, in so doing, determined that the Debtors' bankruptcy case should be presumed to be an abuse under § 707(b). The UST filed a motion to dismiss the bankruptcy as a presumed abuse under §§ 707(b)(2) and (3) and the Debtors filed a response denying the allegations of the motion. After a period for discovery, an evidentiary hearing was held on January 24, 2014. A factual matter concerning a 401(k) loan was left unresolved at the end of the hearing; the parties were asked to supplement the record within 14 days of the hearing by filing supporting documents and legal memoranda. Now having that information in hand, the Court is prepared to make its ruling.

// // //

// // //

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

Page 1 - Memorandum Opinion

## DISCUSSION

A. Section 707(b)(2) Analysis:

Section 707(b) provides in relevant part:

(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. . . .

(2) (A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than [i.e. is greater than or equal to] the lesser of –

(I) 25 percent of the debtor's nonpriority unsecured claims in the case or $7,475, whichever is greater; or

(II) $12,475.

From current monthly income, clauses (ii), (iii), and (iv) allow a debtor to deduct standard expense amounts pursuant to a defined Internal Revenue Service schedule (the IRS Standards) as well as certain specified actual expense amounts, and payments on secured and priority claims. Section 707(b)(2)(B) provides that if a presumption of abuse is found under § 707(b) (the so called "means test'), the presumption may only be rebutted by the debtor "demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."

At the conclusion of the January 24 hearing, certain proposed adjustments made by the UST to monthly income/expenses claimed by Debtors as part of the means test (alleging they were understated/overstated or not appropriate) were still in dispute:

1) Current Monthly Income: The record supports a finding that the Debtors have slightly under reported their monthly gross income. The UST's Exhibit 13 shows a combined monthly gross pay during the six full months prior to the petition date of $7,164.85.

// // //

Page 2 - Memorandum Opinion

2) The Debtors listed $350 in child care expenses, while the UST indicates that evidence of actual costs presented by Debtors shows that childcare should be no more than $297.74 on average. The testimonial evidence is that the Debtors require some flexibility for the care of their young child while they both work which means that, on occasion, the child must be placed with an alternative child care facility, resulting in additional costs. The Court is not prepared to second guess the parents' decision on this matter and will allow the $350 claimed.

3) Debtors estimated monthly tax liability of $1,604.06, while the UST calculates the amount at $1,478.96. The evidence presented demonstrates that the UST's estimate is more accurate.

4) Additional expense deductions of $50 for "continued charitable contributions" and $42 for "additional food and clothing expense." Neither claimed deduction is supported by the record. As the UST points out, case law requires that claims for charitable deductions must be a continuation of a practice of regular donations prior to the date of the bankruptcy petition. *See In re Bender*, 373 B.R. 25, 29 (Bankr. D. Mich. 2007). While the record suggests that there are sporadic contributions, the record does not support any claim that the Debtors had made regular charitable contributions prior to the petition date. As to the additional food and clothing deduction, § 707(b)(2)(A)(ii)(I) allows an additional deduction for food and clothing if it is *"demonstrated that it is reasonable and necessary."* No such demonstration was made.

5) Deduction for actual unreimbursed healthcare costs in excess of the IRS Standards allowance: The Debtors claim a deduction of $120 per month in excess of the $180 allowed by the IRS Standards. Because there was insufficient evidence presented for costs greater than $180 per month, the $120 deduction will not be allowed.

6) The Debtors deducted $200.53 for the monthly payment on loans that the Debtors took out against their retirement accounts. The UST cites to *In re Egebjerg*, 574 F.3d 1045, 1049 (9th Cir. 2009) with regard to whether a debtor's 401(k) loan payments were properly excludable as secured debt payments for purposes of the means test. The court held that "the debtor's obligation to repay a loan from his or her retirement account is not a "debt" under the Bankruptcy Code." A repayment of that loan could therefore not be termed the payment of a "secured debt." At the conclusion of the January 24 hearing, the Court asked for further

Page 3 - Memorandum Opinion

briefing, and a supplement to the record, detailing the nature of the loan from Mrs. Hartley's retirement account, in order to ascertain whether the loan is a draw against the account, or was funded separately, with only repayment being secured by the retirement account. The documents provided by the Debtors make it clear, however, that the loan is from the retirement account itself. In a section of the Loan Application entitled "HR Plan Administrator Approval," the following is provided: "The Plan Administrator authorizes CUNA Mutual to pay the loan proceeds in accordance with the terms of the loan requested above. The loan proceeds and fee will be withdrawn from the participant's vested account balance pro rata from each investment account in which the participant is invested . . . ." It is clear that Mrs. Hartley borrowed funds directly from her own vested retirement account and, accordingly, the payments on that loan may not be deducted for purposes of the means test. The $200.53 deduction for loan repayments is disallowed.

The UST calculated monthly disposable income under § 707(b)(2) at $298.39. Allowing the Debtors' full deduction of $350 for child care reduces the monthly disposable income as calculated by the UST to $246.13. As this amount multiplied by 60 ($14,767.80) exceeds the upper limit of the test at § 707(b)(2)(A)(i)(II) ($12,475), there exists a § 707(b)(2) presumption of abuse.

B. Debtors Failed to Rebut Presumption of Abuse:

The Debtors testified that they wish to spend up to $6,500 to make badly needed repairs to the bathroom in their home. The UST argues that even if other requirements under § 707(b)(2)(B) were met, the Debtors failed to meet their burden of showing "there is no reasonable alternative" to making and paying for estimated repair costs to their bathroom. An alternative put forward by the UST, given Debtors' lack of equity in their residence and current financial inability to fund repairs, would be to surrender their residence and find alternate housing. The Court agrees. The Court is not saying that Debtors must surrender their residence as a condition of bankruptcy, but that they have not met their burden to show that there is no reasonable alternative to making the repairs indicated. Moreover, while it is reasonable to assume that the repairs are important, and perhaps necessary to the sound maintenance of the Debtors' household, the

// // //

// // //

circumstances do not rise to the level specified in § 707(b)(2)(B) of a "serious medical condition" or a call to active duty.² Given that, the house repairs would not rebut the presumption of abuse, even if no reasonable alternative were available.

CONCLUSION

Given the Court's finding that a presumption of abuse exists under § 707(b)(2)(A), which has not been rebutted under § 707(b)(2)(B), an order will be entered dismissing the case 21 days after the entry of the order, unless the Debtors convert their case to one under chapter 13 prior to that time.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

---

² A finding that the repairs to not qualify as "special circumstances" under § 707(b)(2)(B) does not necessarily preclude, however, a chapter 13 plan that makes some provision for the repairs, and payment for those repairs over time.

Page 5 - Memorandum Opinion